Please the court, my name is Walter Shetley. I represent the plaintiff, Appellant Zen K. Inouye in this case. There aren't any legal issues that I'm aware of. Everybody agrees about the law. It's just this case is a question of the application of the law to the evidence. I think I have made my arguments as well as I can in the briefs and I don't have anything further to add. Well, it looked to me as if you've essentially got a 1983 action, as I understand the situation, and you've alleged a violation of the First Amendment by the forcing to attend the superior human being or something or other like that. Well, the AA program, which specifically says belief in God. Yeah. Okay. So that's a pretty good First Amendment claim. And you've made a good argument that it's a violation of the First Amendment to force this guy into that program. The other one was a Fourth Amendment violation and that would depend on the reasonableness of the search, I think. Is that correct? The reasonableness of... There's a question of whether or not there was a search, Your Honor, a dispute in the evidence as to whether or not there was a search. I think... What was the Fourth Amendment violation that you allege? Whether or not there was a seizure as to whether or not there was a Terry search beforehand, that's in dispute. All right. So there the question would be whether there was sufficient basis to seizure a client, I guess. And if the decision by the lower court is correct, on summary judgment there was not. Yes. Is that correct? Well, yes. The court below said that his attempt to escape or flee gave the claim seems to depend on how the court below viewed the evidence and ruled on summary judgment. The First Amendment claim seems to be a pretty good legal argument. And so now, as long as you and I are on the same page, that you're talking about a First Amendment claim and a Fourth Amendment claim. Yes. Well, the application of the law that I think is wrong in the First Amendment is that the law was not clear and that the law... And I can't see that. I mean, as far as I'm concerned, I... Here's one thing I'd like to clear up. There was an earlier opinion by Judge Mollway in another case by the same... Plaintiff. Plaintiff. Actually even covering on the same issue, holding that there was no qualified immunity. And it points in your brief now, you seem to be arguing collateral estoppel. But my understanding is that... Are you arguing collateral estoppel? The collateral estoppel argument may be a little shaky because the ruling was not... I mean, this defendant was not involved in that ruling. He was dismissed because the claims against him were moot. And the claims against the other defendants were not dismissed by the ruling that the law was clearly established. So to the extent that... And also, wasn't the whole case eventually settled so there was never actually a final judgment? The case was settled after the ruling that there... So there was no final judgment. So that's why, for both of those reasons, although informative, there's no collateral estoppel. That's what I was trying to figure out. Well, yes. Well, I'm not relying wholly upon collateral estoppel, but the fact of the law. The difference between the two cases was, in the Cayetano case, he was already in prison. He was not put into a program that involved AA or NA. He was put into a so-called secular alternative program. And the difference between the AA-NA program and the secular alternative program was that every place where the AA-NA program says God, they struck out God and they put in higher power. And the argument in that case was, there's no difference between God and a higher power. And that was an issue of fact. But here, the only thing in the record is higher power, right? I mean, there is no record in this case as to this program, really. There's just the complaint. I mean, nobody seems to have any doubt, because it's the same program that's been adjudicated all over the place, that there was at least a reliance on higher power, but not on God as such, right? Yes. I think all the case law says, it makes it clear that the AA program, NA program, espouses belief in God. And the whole program is based on God being... Counsel, let me ask you, I have the same concern Judge Berzin has with regard to the proof that's actually in this record. We don't even know that this particular program follows the 12 steps, because the only place that appears in the record is in some letter, I guess, that you wrote, which is not admissible evidence. Your client is now dead. The probation or parole officer says, he never told me that he objected to participating in this program. If we remand this thing back to the court for trial, how are you going to even establish a prima facie case? In order to get past a directed verdict motion at the close of your case? It's very simple. There is no contradictory evidence. There's no sworn evidence that the ATS program does not require AANA. That's your objection. That's just true. I mean, he did object. He wrote letters. There's no dispute about the fact that the ATS program, the Salvation Army program, requires participation in AANA. You're saying you can just prove it by proving what the program was. Yeah, I just have somebody come from ATS and say, yes, we require AANA. And I have somebody come from AANA and say, yes, we require... Now let's go to my second concern, which is your ability to prove that there was an actual objection that was made by your client to his parole officer. Well, I submit, Your Honor, it doesn't require an objection. But he did, in fact, object. Judge Ezra even said that there was sufficient evidence. Well, you got a letter to the parole board, but don't you still have to make an evidentiary link that that letter that went to the board actually got into his file and that the parole officer read it and was aware of it? Well, there's also some notes that he made himself in his own report in which he says that the plaintiff was threatening to sue because he was being put into that program. He also brought a lawsuit against this defendant on this issue. Well, that was afterwards, though. I mean, that's the problem with that. But the other lawsuit, the decision was afterwards and the complaint was... The amended complaint was afterwards, but the decision referred to a time that was before where the law was clear. All right. You want to reserve your time? Yes. Thank you. Thank you. Is the state conceding that there was a First Amendment violation here? Your Honor, good morning. I'm with the city. It's the city. I'm sorry. If you'd like to hear from the state first, that's fine. Well, are you conceding? I don't want to do that. I actually think that question would better be answered by a counsel for Mr. Nash-Morris. Thank you. Good morning, Your Honors. This is Kendall Moser. I work for the State of Hawaii Department of the Attorney General. I represent Apele Mark Nanamori, who was the decedent's parole officer. And I'm sorry, I didn't quite... My question is just, does the state concede that there was a First Amendment violation here? What the state concedes is that Judge Ezra, the district court judge, found that the plaintiff made a colorable claim that there was a triable issue. Specifically, so the court finds the plaintiff states a claim for violation of the Establishment Clause, and on these facts, plaintiff has created a triable issue. I understand that. But you are still planning to contest that? Yes, Your Honor. If the case goes to trial? Yes. Even though every single court that's addressed it in the last 15, 18 years has held other ones? Actually, Your Honor... Is that right? No. Respectfully, Your Honor, that is not correct. I know of one district judge court in 1991, and since then I think every case has come out the other way. There was a 1991 district court opinion from Kansas. And since then, have there been any cases which were mandatory, not voluntary, that held that this was okay? I'm hesitating for a moment to recall. The answer is no. Well, I don't recall. You don't know of one. I don't know whether they were mandatory, not voluntary. There are the other two opinions which we cited. Those were said to be voluntary, so the answer is no. Okay, then with that, Your Honor, then none that I am aware of. So what Mr. Nonamori's position is, is that Judge Ezra, the district court judge, was correct when he found that a reasonable parole officer in Mr. Nonamori's situation would not have known that... And on what basis could that be so? Because there was one 1991 district court opinion that every opinion since has disagreed with? And I know that Your Honor is not particularly fond of the later decisions, but in addition to that 1991 decision, we cited to Judge Ezra... I'm not fond of them. They're just not on point because they specifically say that they were not mandatory. Well, respectfully, Your Honor, Judge Ezra did rely on those other two opinions in addition to... Well, he actually said that. He actually said in his substantive discussion that those two were not on point. And then when he gets to the qualified immunity, he relies on there being other cases, but he never says what they are. What are they? Well, then I guess what we need to look at, Your Honor, is what would a parole officer understand? You know, attorneys, or at least this attorney is having a little bit of difficulty understanding the distinction between voluntary and mandatory. What would a parole officer in Mr. Nonamori's position understand when there are four or five decisions which say that participation in a first amendment violation... Let me ask you something. Are there at least three that say, no, it's not? What are the stakes here? I mean, I assume that if this thing goes to trial and you have a deceased plaintiff, the damages are probably going to be a dollar. We're almost surely talking nominal damages. So what are we talking about here exactly? I mean, what are the stakes? Well... Assuming that there was a first amendment violation, how does the qualified immunity even matter very much? Well, it matters because we have to look at what was going on, what was the state of the law in 2001? What should this parole officer have understood in 2001 the state of the law was? I understand that, but in fact, it's attorney's fees we're discussing? I mean, what's the practical on-the-ground significance of whether there is or isn't qualified immunity? I think that the paroling authority and also the prison, which also uses substance abuse treatment programs, approximately 80 percent of the offenders in the state of Hawaii prison system are in there for drug offenses or drug offenses and some other offense. I think that the paroling authority and the state of Hawaii Department of Public Safety, which runs our prisons, is entitled to know whether the program which they are administering today and have been administering for years violates the first amendment. Well, that's the merits. I understand that. That's the merits. But I want to know what the practical significance of the qualified immunity determination is. I agree with you that it would be nice to have an opinion on the Ninth Circuit about the validity of this kind of program. But that's a different question. What about the qualified immunity decision? Well, I'm sorry. I don't know what to say beyond what I've already said in answer to that question. Counsel, Judge Ezra in his summary judgment order expressed a concern, I'm trying to find the citation to it, about the not wanting parole officers to basically be chilled or deferred by parolees to sue them every time the parole officer told them to do something. Yes, Your Honor. I recall that passage. I have the same concern, I'm concerned about the same issue that Judge Berzon has raised, but from a different perspective, and that is it seems to me that there's more here at stake than just whether or not Mr. Schuttle gets his attorney's fees and a dollar in nominal damages. But the bigger issue is why couldn't Mr. Inouye have simply gone back to the sentencing court if he had a concern about this program and asked the judge to change or strike the condition of parole? The court still had jurisdiction to do that, did it not? Yes. I think procedurally, Your Honor, the first step would have been to request some sort of reconsideration or re-hearing of the paroling authority, because it is the paroling authority which set as a term and condition of Mr. Inouye's appeal that he participate in such as a district program. So my concern as a judge is that he starts allowing parolees to essentially take into terms of their supervision by 1883 actions rather than just the easier and quicker step of going back to the sentencing court and raising a legitimate objection to this particular condition. We could be opening ourselves up to something we don't want to see. I think that's an excellent point, Your Honor. Well, is that what Judge Ezra was talking about? Because that's how I read that part of his decision. I'm not able to say what Judge Ezra was thinking about that, Your Honor. I recall that passage, but what led him to put that into his order. I don't recall any substantive discussion. Well, there's certainly some discussion in the cases that go contrary to the cases that the plaintiff went. Is there not? I mean, I certainly read that in some of those three cases that go the other way. Yes, I think that is a logical and procedural way to address this issue. Again, for the parolee to go back to the parole office or, as you say, Your Honor, the sentencing court and request relief. All right. Now, can you help me with the evidentiary question that I asked Plaintiff's counsel? What did your client know about Mr. Inouye's objection to this particular program? Well, clearly Mr. Inouye had an objection to the program. And Mr. Inouye told him, as he stated in his declaration, that you, Mr. Inouye, can participate in a different program of your own choosing. If you come to me and say, hey, I want to go to this program instead, that's something that Mr. Inouye told you. All the declarations said, as I recall, was if he had asked me, I would have told him he could participate in a different program. He didn't say he did it. Well, actually, Your Honor, the term and condition of the parole, the actual document that the Parole Authority issues, it's a decision. It says that you shall obtain and participate in a substance abuse treatment program as directed by your parole officer. All right. So Mr. Inouye could have gone, I think at least that writing put him on notice that it was his obligation to actually choose the program that he wanted to participate in. And he didn't write a letter objecting to the program? And it wasn't in his file? I don't believe he wrote a letter. I believe he said something to his parole officer at one point. I thought he also wrote a letter, or his attorney wrote a letter. His attorney wrote a letter. And it was in the file. It was actually a letter that he wrote while Mr. Inouye was still incarcerated, but was probably likely to be paroled later that year. Was your client aware of the letter? Well, Mr. Nonomori was his parole officer, had access to his parole file. And it was in the file? I have to assume that Mr. Nonomori was familiar with the contents of that letter. And it was in the file? Which was in his parole file. All right. Yes. But, again, as Judge Ezra found, that letter also refers to, as sort of legal support, you know, don't put my client in this program, refers to the decision of Kerr v. Ferry and a 1996 opinion from the appellate court in New York. As Judge Ezra found in his order, that decision would not have put Mr. Nonomori on notice that placing the decedent into this program was some sort of First Amendment violation, because if for no other reason, the court in that opinion found that the parole officers had qualified immunity. So? I'm sorry. I don't understand that. They also found that was a First Amendment violation. Well, they said that the parole officer had qualified immunity. Yes, but they said it was a First Amendment violation. You're saying basically that they're entitled to violate the law as long as they have qualified immunity, but it was a First Amendment violation. Well, Your Honor, that was one court from another jurisdiction. And, again, it's just one of the many out there. There are, as I counted, about 50-50. I know that Your Honor, I have a bit of a disagreement on that, but there are about 50% of the cases that say it is a First Amendment violation. Oh, I'm sorry. That just is not so. I mean, even if you count those three district court opinions, it's still not so or close to so. Anyway. Well, if I'm off on the percentages and I'm off on the numbers, Your Honor. Well, forget about the percentage. I think the point that Judge Risen is making, which I share, is if Kerr said we find the law wasn't clearly established at this point, so we're letting these defendants off, that basically puts the rest of the world on notice that that's the only truth we have, right? Well, Your Honor. The law now is settled. It's a First Amendment violation. And henceforth, everybody from this day forward better abide by it. Well, Your Honor, I agree respectfully that I don't think the scope of that opinion is that broad. And second, of course. Would you agree that if a parole officer in the Seventh Circuit, who is obviously bound by the decisions of the Seventh Circuit, after Kerr v. Ferry ordered somebody into one of these programs over objection, it would be a violation of the First Amendment? I think that parole officer would have a much more difficult time arguing that he or she was entirely qualified to do it. Certainly.  I see my time is up. Thank you, Your Honor. I mean, you don't actually have any time, but we'll give you two minutes. You're up to time. Thank you. Good morning, Your Honors. May it please the Court, my name is Marie Manuel-Gavigan. I'm here on behalf of the defendants, police, City and County of Honolulu, and Officer Kemna. Just as a matter of preliminary matter, the City has filed a motion to dismiss this appeal for lack of jurisdiction, which I understand will at some point be ruled on. Is that because of the status, that it lapsed and then the Circuit Court reinstated it? Well, Your Honor, there was a special administrator appointed for six months only, and the case proceeded for well over a year without, to allow the But you're not disputing that at the time that the lawsuit was filed, he was the duly appointed personal representative of the estate? Actually, at the time the lawsuit was filed, Mr. Inouye was still alive, and during the litigation he passed away, and then the special administrator was appointed for a period of six months. That special administrator was appointed in September of 2004. The six-month period lapsed March 20th of 2005. So what difference does it make? But then he was reappointed for a three-year term that now expires in 2009. That is correct, but the reappointment came in September of 2006, and it was not made non-pro-tunc. So for that time period, I think technically there was no plaintiff in this case, and I just mention it for the record that we have filed that motion to dismiss. But I don't understand the principle of law here. This is not like the plaintiff has died and therefore the case is moved. No, Your Honor. There was no plaintiff. There was no plaintiff, so we took the position there was no jurisdiction. But you didn't move to dismiss in the interim, did you? That is correct. We did not. That is correct. So if the circuit court reappointed the administrator, and after that point you moved to dismiss, where's the movement? You now have a live plaintiff. You've got a personal representative who's duly appointed by the circuit court. That is correct, Your Honor. So I don't understand what principle of law would give us the authority to grant your motion. Well, Your Honor, the only point that I wanted to make was that the appointment of this personal representative was not made not pro trunc, so it didn't go backwards. There's a gap. But you didn't move to dismiss during the gap. That's correct, Your Honor. And there wasn't a gap at the time you filed the motion, so I don't see where that gets you. I mean, if you want a ruling now, I'll give it to you. I don't know if my two colleagues are with me on this. Why don't you move on to your next point? Okay. And why don't you do it in about a minute, because you're well over time. Okay. Well, Your Honor, the point that actually we believe that Judge Edsel made the right decision, that he decided that there was no constitutional violation. However, even if there were a constitutional violation, that qualified immunity does apply to Officer Kemna in this case, and we believe that the record certainly is clear that Officer Kemna was entitled to qualified immunity for his actions. He's the one that made the seizure? That is correct, Your Honor. Okay. So we would just ask that the district court's ruling be affirmed. Okay. Thank you very much. Thank you. Well, Your Honor, just to clarify, there was a gap. They did make their motion to dismiss during a period when the original appointment was expired. Oh, so they did move during the gap? Well, that was here in the appellate court. At that particular time, I did. But what is Hawaii law with regard to the obligations and authority of an expired representative? I thought he still had some obligation and authority to continue to preserve the estate rather than to abandon it. Of course. I mean, the fact that it's not non-plutonk, I mean, if the court requests, I will go back to the circuit court and ask for an order non-plutonk. Well, what happened? I assume the case was just sitting on the docket at that point. Were you actively litigating it? Were depositions being taken, discovery being made? Actually, it wasn't particularly of any concern to anybody until we got up here on appeal, and then they bring this subject up. Oh, by the way, that appointment was only for six months, and it's expired, and therefore we want to have the appeal dismissed. So then actually I had been telling my client for quite some time that we needed to do this, but he was quite busy and so forth and so on, so it didn't happen. But after they made the motion, I went back, and it was done. And that it says non-plutonk doesn't say non-plutonk, but I mean. I assume that this lawsuit is the only viable asset. Yes. Okay, thank you very much. Certainly he would be liable to be sued by the other beneficiaries for failing to, you know. To discharge his fiduciary obligation. Now, okay, getting back to Mr. Nanomori, he doesn't have to know the state of the law. The state of the law just has to be clear. He doesn't have to know it. It's not a question of what he knows. It's a question of the law. We never did talk about the claim against the city, which is that, and they didn't bring it up in their briefs. It was mentioned in the opening brief. The claim against the city is that the prosecutors used false testimony by Officer Kemne that he did conduct a pat-down search and that they knew it was false. This resulted in Mr. Inouye being in prison for an additional 16 months, during which time he was ineligible for parole. As soon as that appeal was dismissed, dismissed by the Supreme Court of the State of Hawaii, then he was allowed to go over to Guayaba and proceed with his path to parole. And three months later, he got parole. So during that 16-month period, he was sitting in jail while a frivolous appeal was pending, and we say that was a policy of the prosecutors that prosecutors can establish. But that does the damage, does it not? I mean, you didn't appeal the dismissal as against the prosecutor for the city encounter. Yes. No, no, no. The claim against the city is based upon the conduct of the prosecutors. Against the liability of the officer? It's not. Or against prosecutors? Based on the prosecutor's conduct. But the prosecutors were dismissed under Embler v. Pacman because they're qualified, or ways of judicial. I thought the only issue here now was, and I guess this is what Judge Talmadge is saying, is a Fourth Amendment issue, not a malicious prosecution issue or anything like it. That's a due process claim, I believe, Your Honor, that they used, knowingly used false testimony.  It's... Page 13. Yeah, that's all about... Oh, I see, okay. It's elaborated on in the reply brief as well. So the city is not liable for the conduct of the officer under 1983. The city is only liable if they have a policy which is unconstitutional. And prosecutors can establish policy according to... Penn-Bauer v. Cincinnati, I believe. And so the theory would be that because the appeal was frivolous, that that was a policy to essentially harm... Because Judge Watanabe said no probable cause. Judge Watanabe said, I don't believe this officer. He's not... No, no, but it's a fact. I mean, that's what he found. Well, it may be a fact, but the jury in federal court is never going to hear that. Well, they should because... Well, you're going to have to take that up with the trial judge if we let you go back. Okay, thank you very much, counsel. Thank you for your arguments. The case of Inouye v. Cameron is submitted. We'll take a short break.
judges: Thompson, Berzon, Tallman